UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

VERONICA GREEN                          DOCKET NO. 6:14-cv-00033

VERSUS                                  JUDGE DOHERTY

U.S. COMMISSIONER                       MAGISTRATE JUDGE HANNA
SOCIAL SECURITY ADMINISTRATION


## REPORT  AND  RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be reversed and remanded for further consideration consistent with this report and recommendation.

### BACKGROUND

The claimant, Veronica Green, was born on April 7, 1967.[1]  On June 3, 2011, when she was forty-four years old, Ms. Green applied for Supplemental Security Income benefits, alleging a disability onset date of November 1, 2010[2] due to muscle

---

[1]      Rec. Doc. 20-1 at 102.

[2]      Rec. Doc. 20-1 at 102.

spasms in her back, stiffness in her joints, and swelling in her back.[3]  Ms. Green has

a twelfth grade education[4] and has not worked since 2005.[5]

The record contains no explanation for Ms. Green's claimed disability onset

date of November 1, 2010.   However, the record shows that she consistently

complained to her physicians of low back pain from August 10, 2010 to May 14,

2012.[6]  During that time period, she was typically seen by her physicians on a

monthly basis.  She was diagnosed with lumbago,[7] which is nothing more than "an

old popular term for lower back pain."[8]  In other words, lumbago is "a descriptive

term not specifying cause."[9]

A CT scan of Ms. Green's lumbar spine, conducted on March 5, 2012, showed

multilevel spondylosis with no evidence of significant spinal stenosis or disc

---

[3]        Rec. Doc. 20-1 at 129.

[4]        Rec. Doc. 20-1 at 130, 191.

[5]        Rec. Doc. 20-1 at 31, 129.

[6]        Rec. Doc. 20-1 at 178 (August 10, 2010); 179 (August 30, 2010); 180 (September 28, 2010); 181 (November 5, 2010); 182 (November 29, 2010); 184 (January 5, 2011); 185 (March 7, 2011); 186 (May 27, 2011); 191 (July 16, 2011); 291 (August 10, 2011); 286 (September 12, 2011); 283 (October 12, 2011); 267 (February 23, 2012); 250 (March 12, 2012); 312, 314, 320, 321 (April 12, 2012); 303, 310 (April 26, 2012); and 332 (May 14, 2012).

[7]        Rec. Doc. 20-1 at 178, 179, 180, 181, 184, 186, 218, 256, 279, 281, 286, 291, 295.

[8]        The Free Dictionary, http://www.medical-dictionary.TheFreeDictionary.com/lumbago (last visited January 7, 2015).

[9]        Stedman's Medical Dictionary 1034 (Maureen Barlow Pugh, ed.), 27th ed. 2000.

herniation.[10]  Spondylosis is ankylosis (a stiffening of the joints)[11] of the vertebra or

simply a degeneration of the spine.[12]  Ms. Green was referred to an orthopedist,[13] but

the record contains no evidence that she was ever seen by such a specialist.  Her

doctors advised her to sit only on straight chairs,[14] to walk thirty minutes per day,[15]

to use a heating pad,[16] to get a rolling bag,[17] and to do stretching exercises.[18]  She was

also prescribed various medications for her back pain including Voltaren,[19] which is

used to relieve pain, swelling (inflammation), and joint stiffness caused by arthritis;[20]

salsalate,[21] which is a nonsteroidal anti-inflammatory drug ("NSAID") used to relieve

---

[10]     Rec. Doc. 20-1 at 322.

[11]     Stedman's Medical Dictionary 90 (Maureen Barlow Pugh, ed.), 27th ed. 2000.

[12]     Stedman's Medical Dictionary 1678 (Maureen Barlow Pugh, ed.), 27th ed. 2000.

[13]     Rec. Doc. 20-1 at 303, 336.

[14]     Rec. Doc. 20-1 at 292.

[15]     Rec. Doc. 20-1 at 292.

[16]     Rec. Doc. 20-1 at 179.

[17]     Rec. Doc. 20-1 at 178.

[18]     Rec. Doc. 20-1 at 303.

[19]     Rec. Doc. 20-1 at 191, 293.

[20]     Web MD, www.webmd.com/drugs/2/drug-54/voltaren-oral/details (last visited Jan. 8, 2015).

[21]     Rec. Doc. 20-1 at 287.

pain;[22] and Tramadol,[23] which is used to treat moderate to moderately severe pain.[24] She was also prescribed Celebrex,[25] Flexeril, Naproxen, Percocet,[26] and Mobic.[27] Celebrex is used to treat the pain and swelling of arthritis;[28] Flexeril is used to treat muscle spasms;[29] Naproxen is an NSAID used to treat pain;[30] Percocet is a narcotic pain reliever used to treat moderate to severe pain;[31] and Mobic is another NSAID, which is used to treat the pain, stiffness, and swelling of arthritis.[32]

---

[22] Web MD, www.webmd.com/drugs/2/drug-8704/salsalate-oral/details (last visited Jan. 8, 2015).

[23] Rec. Doc. 20-1 at 284.

[24] Web MD, www.webmd.com/drugs/2/drug-4398-5239/tramadol-oral/details (last visited Jan. 8, 2015).

[25] Rec. Doc. 20-1 at 259.

[26] Rec. Doc. 20-1 at 314.

[27] Rec. Doc. 20-1 at 303.

[28] Web MD, www.webmd.com/drugs/2/drug-16849/celebrex-oral/details (last visited Jan. 8, 2015).

[29] Web MD, www.webmd.com/drugs/2/drug-11372/flexeril-oral/details (last visited Jan. 8, 2015).

[30] Web MD, www.webmd.com/drugs/2/drug-5173-1289/naproxen-oral/details (last visited Jan. 8, 2015).

[31] Web MD, www.webmd.com/drugs/2/drug-7277/percocet-oral/details (last visited Jan. 8, 2015).

[32] Web MD, www.webmd.com/drugs/2/drug-18173/mobic-oral/details (last visited Jan. 8, 2015).

On July 16, 2011, Ms. Green was consultatively examined by Dr. Barnabas Fote.[33]  Dr. Fote noted that Ms. Green complained of muscle spasms in her back as well as a constant stabbing pain in the low back without any radiation.  Ms. Green described to Dr. Fote the conservative treatment she had previously undergone and told Dr. Fote that getting up from a seated position aggravates her symptoms while nothing specific alleviates her pain.  Dr. Fote observed that Ms. Green was able to walk into and out of the examination room without assistance and without the use of an assistive device.  However, he also observed that she walks with a slight limp.  Dr. Fote found that the deep tendon reflexes and strength in her lower extremities were normal.  He found no skin color changes, varicosities, ulcerations, claudication, edema, or ankle tenderness.  He did observe right paraspinal lumber tenderness around L3-L4.  His diagnosis was a history of back pain.  His assessment was that Ms. Green should be able to sit and stand as tolerated but he did not provide a residual functional capacity evaluation.  Dr. Fote did not give an opinion concerning whether Ms. Green is capable of sitting or standing for any specific time period nor did he give an opinion concerning whether she is capable of performing any specific level of work.

---

[33]        Rec. Doc. 20-1 at 191-193.

On July 27, 2011, it was determined that Ms. Green is not disabled.[34]  The record does not contain evidence of any restrictions placed on Ms. Green's activities by her treating physicians or any evaluations of her residual functional capacity by her treating physicians.  On April 26, 2012, however, Tammy Hebert-Briley, Ms. Green's treating nurse practitioner, completed a residual functional capacity questionnaire, which indicates that Ms. Green can sit for about three to four hours per day and stand for approximately three to four hours per day but will need unscheduled breaks every forty-five to sixty minutes throughout the work day.[35]

Ms. Green requested a hearing,[36] which was held on June 21, 2012 before Administrative Law Judge ("ALJ") W. Thomas Bundy.[37]  At the hearing, Ms. Green described her back pain and explained that prolonged sitting increases her pain.[38] She also complained to her physicians that "it hurts for her to sit down for long periods of time."[39]  At the hearing, she stated that, although she has good days and bad days,

---

[34]     Rec. Doc. 20-1 at 43.

[35]     Rec. Doc. 20-1 at 203-204.

[36]     Rec. Doc. 20-1 at 53.

[37]     Rec. Doc. 20-1 at 30.

[38]     Rec. Doc. 20-1 at 40.

[39]     Rec. Doc. 20-1 at 250.

the bad days outnumber the good ones.[40]   She also explained that some of the medications she has been prescribed have the undesirable side effect of making her sleepy and unable to function properly,[41] echoing a complaint she made to her physicians.[42]

The ALJ rendered an unfavorable decision on July 6, 2012.[43]   The claimant requested review of the ALJ's ruling, but the Appeals Council denied review.[44] Accordingly, the ALJ's decision is the Commissioner's final decision for purposes of judicial review.[45]   The claimant now argues that her back pain is disabling.

## ASSIGNMENT OF ERRORS

The claimant argues that the Commissioner's ruling is erroneous for four reasons:  (1) because the ALJ's residual functional capacity finding is not supported by substantial evidence and contains legal error; (2) because the ALJ failed to recognize her claimed inability to sit for long periods of time; (3) because the ALJ failed to consider her claim of adverse medication side effects; and (4) because the

---

[40]   Rec. Doc. 20-1 at 37.

[41]   Rec. Doc. 20-1 at 32.

[42]   Rec. Doc. 20-1 at 303, 310, 312, 314, 322

[43]   Rec. Doc. 20-1 at 19-24.

[44]   Rec. Doc. 20-1 at 8.

[45]   42 U.S.C. § 405(g).

ALJ improperly relied exclusively on the Medical-Vocational Guidelines in determining that there are jobs that the claimant can perform.

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision that the claimant is not disabled is limited to determining whether the decision was supported by substantial evidence and whether the proper legal standards were applied in reaching the decision.[46] If the Commissioner's findings are supported by substantial evidence and the decision comports with relevant law, the decision must be affirmed.[47] Substantial evidence is more than a mere scintilla and less than a preponderance.[48] A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[49] Finding substantial evidence does not involve a search of the record for isolated bits of evidence that support the Commissioner's decision; instead, the entire record must be scrutinized as a whole.[50]

---

[46]     42 U.S.C. § 405(g); *Alfred v. Barnhart*, 181 Fed. App'x 447, 449 (5th Cir. 2006); *Boyd v. Apfel,* 239 F.3d at 704.

[47]     *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[48]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

[49]     *Boyd v. Apfel,* 239 F.3d at 704.

[50]     *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

The court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[51]  A claimant has the burden of proving his disability.[52]

A claimant seeking Social Security benefits bears the burden of proving that he is disabled.[53]  Disability is defined in the Social Security regulations as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[54]  Substantial gainful activity is defined as work activity that involves doing significant physical or mental activities for pay or profit.[55]

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  At step one, an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings. At step two, an individual who does not have a severe impairment will not be found disabled.  At step three, an individual who meets or equals an impairment listed in the

---

[51]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

[52]     See *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

[53]     *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).

[54]     42 U.S.C. § 423(d)(1)(A).

[55]     20 C.F.R. § 404.1572.

regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 will be considered disabled without consideration of vocational factors.  If an individual is capable of performing the work he has done in the past, a finding of not disabled must be made at step four. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if the claimant can perform any other work at step five.[56]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[57] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the claimant's record.[58]  The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and is used at the fifth step to determine whether the claimant can adjust to any other type of work.[59]

---

[56]     See, e.g., *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991), summarizing 20 C.F.R. § 404.1520(b)-(f).  See, also, *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[57]     20 C.F.R. § 404.1520(a)(4).

[58]     20 C.F.R. § 404.1545(a)(1).

[59]     20 C.F.R. § 404.1520(e).

-10-

The claimant bears the burden of proof on the first four steps.[60]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[61]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[62]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[63]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[64]

In this case, the Commissioner found, at step one, that Ms. Green has not engaged in substantial gainful activity since May 12, 2011, the date on which she applied for Social Security benefits.[65]  The only application found in the record indicated that Ms. Green applied for Supplemental Security Income benefits on June

---

[60]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[61]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[62]     *Fraga v. Bowen*, 810 F.2d at 1304.

[63]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[64]     *Anthony v. Sullivan*, 954 F.2d at 293, citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

[65]     Rec. Doc. 20-1 at 21.

-11-

3, 2011 and alleged a disability onset date of November 1, 2010.[66]  However, the record also contains a Disability Determination Explanation letter concerning a disability insurance claim that references an application date of May 12, 2011 and an alleged onset date of July 16, 2010.[67]  The letter denying Ms. Green's application for Supplemental Security Income payments states that she claimed an onset date of July 16, 2010.[68]  Apparently, two separate applications for benefits were conflated, and the record is not complete.  The undersigned finds, however, that this is harmless error since there is no evidence that Ms. Green has worked since 2005, a date several years before either application date or alleged disability onset date.  Therefore, although the ALJ's finding is not supported by evidence in the record, the undersigned finds that Ms. Green has not engaged in substantial gainful employment at any time since 2005. Because the undersigned is recommending that the Commissioner's ruling be reversed and remanded, the undersigned recommends that the record be supplemented to accurately document the date on which Ms. Green applied for Social Security benefits and the date on which she alleges that her claimed disability began.

---

[66]     Rec. Doc. 20-1 at 102.

[67]     Rec. Doc. 20-1 at 44.

[68]     Rec. Doc. 20-1 at 49.

At step two, the ALJ found that Ms. Green has the following severe impairment:  lumbar spondylosis.[69]  This finding is supported by evidence in the record.

At step three, the ALJ found that Ms. Green does not have an impairment or a combination of impairments that meets or medically equals a listed impairment.[70] Ms. Green does not challenge this finding.

At the next step of the process, the ALJ found that Ms. Green retains the residual functional capacity to perform the full range of sedentary work.[71]  Ms. Green objects to this finding.

At step four, the ALJ found that Ms. Green has no past relevant work.[72]  This finding is supported by evidence in the record.[73]

At step five, the ALJ applied the Medical-Vocational Guidelines and found that Ms. Green is not disabled.[74]  Ms. Green disputes this finding.

---

[69]     Rec. Doc. 20-1 at 21.

[70]     Rec. Doc. 20-1 at 21.

[71]     Rec. Doc. 20-1 at 21.

[72]     Rec. Doc. 20-1 at 23.

[73]     Rec. Doc. 20-1 at 110-111.

[74]     Rec. Doc. 20-1 at 24.

-13-

<u>DISCUSSION</u>

**(1)   DID THE ALJ ERR IN EVALUATING THE CLAIMANT'S RESIDUAL FUNCTIONAL CAPACITY?**

**(2)   DID THE ALJ ERR IN FAILING TO RECOGNIZE THE MS. GREEN'S CLAIMED INABILITY TO SIT FOR LONG PERIODS OF TIME?**

The claimant's first two assignments of error actually address the same issue: whether the ALJ erred in finding that the claimant has the residual functional capacity to perform the full range of sedentary work despite her complaint that her low back pain is aggravated by prolonged sitting.  The Commissioner found that Ms. Green retains the residual functional capacity to perform all sedentary work.  Sedentary work, as defined in the Social Security regulations, involves lifting no more than ten pounds at a time, occasionally lifting or carrying articles like docket files, ledgers, and small tools, sitting for about six hours out of an eight-hour workday, and occasionally walking or standing.[75]  In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately six hours of an eight-hour workday, with a morning break, a lunch period, and an afternoon break at approximate two-hour intervals.[76]  "If an individual is unable to sit

---

[75]     20 C.F.R. § 404.1567(a); *Ripley v. Chater*, 67 F.3d 552, 557, n. 25 (5th Cir. 1995); *Lawler v. Heckler*, 761 F.2d at 198.

[76]     *Guzman v. Barnhart*, 159 Fed. App'x 578, 581 (5th Cir. 2005).

-14-

for a total of six hours in an 8-hour work day, the unskilled sedentary occupational base will be eroded."[77]

The record contains no opinion from any of Ms. Green's physicians concerning the types of activities in which she can still engage despite her lumbar spondylosis and the back pain that this condition may cause.  However, Ms. Green notified her doctors and testified at the hearing that her pain is worsened by sitting for long periods of time.  Nurse-practitioner Tammy Hebert-Briley opined that Ms. Green is able to sit for only five to ten minutes at a time and for only three to four hours out of an eight-hour work day.[78]  The consulting examiner, Dr. Fote, opined that Ms. Green "should be able to sit and stand. . . as tolerated."[79]  The record contains no source that disputes Ms. Hebert-Briley's opinion.

The ALJ's finding that Ms. Green can perform the full range of sedentary work is inconsistent with Dr. Fote's opinion, inconsistent with Ms. Hebert-Briley's opinion, and inconsistent with Ms. Green's own statements regarding the relationship between sitting for prolonged periods of time and back pain.  Since the record contains no medical source that disputes Ms. Hebert-Briley's opinion, the ALJ

---

[77]     *Guzman v. Barnhart*, 159 Fed. App'x at 581, quoting Social Security Ruling 96-9p, 1996 WL 374185, at *6 (July 2, 1996).

[78]     Rec. Doc. 20-1 at 203.

[79]     Rec. Doc. 20-1 at 193.

reached his conclusion regarding Ms. Green's residual functional capacity by substituting his own opinion for that of the only source who evaluated Ms. Green's functional capacity. The law is clear that "[t]he ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."[80] Furthermore, it is improper for an ALJ to rely upon his own unsupported opinion as to the limitations presented by the applicant's medical conditions.[81] Therefore, the ALJ's conclusion that Ms. Green retains the residual functional capacity to perform the full range of sedentary work is not supported by substantial evidence.

Accordingly, the undersigned recommends that this matter be remanded so that the claimant's residual functional capacity can be reevaluated.

### (3)   DID THE ALJ ERR IN FAILING TO CONSIDER MS. GREEN'S CLAIM REGARDING THE SIDE EFFECTS OF HER MEDICATION?

The treatment notes contained in the record show that Ms. Green complained to her physicians about the side effects of the medications prescribed to treat her low back pain. She also described those side effects in her testimony at the hearing. Accordingly, an evaluation of medication side-effects and any impact that the side effects might have on Ms. Green's residual functional capacity would have been appropriate in this case. But the ALJ did not address the alleged side effects of her

---

[80]    *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

[81]    *Williams v. Astrue*, 355 Fed. App'x 828, 832 n. 6 (5th Cir. 2990).

-16-

medication when he evaluated her residual functional capacity or when he evaluated her credibility.[82]  This was reversible error.

Under the Social Security regulations, the Commissioner is required to consider seven factors when evaluating the credibility of a claimant's subjective complaints, including the "type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [ ] pain or other symptoms."[83]  "Since substantive regulations have the force and effect of law, an ALJ's failure to employ the seven-factor analysis when assessing the credibility of subjective complaints constitutes legal error."[84]  The ALJ is required to consider the side effects of medication when evaluating a claimant's symptoms and also when evaluating a claimant's residual functional capacity.[85]  When evidence concerning the potential side effects of medication is ignored by the ALJ, the ALJ's findings are not substantially supported by the record when viewed as a whole.[86]

---

[82]     The undersigned further notes that although the claimant addressed this issue in her briefing, the Government failed to address it in its opposition memorandum.

[83]     20 C.F.R. § 404.1529(c)(3)(iv).

[84]     *Daws v. Astrue*, No. 1:06-CV-197, 2007 WL 4560488, at *3 (E.D. Tex. Dec. 19, 2007), citing *Donohue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002) and *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990).

[85]     *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999).

[86]     *Loza v. Apfel*, 219 F.3d at 397.

In this case, the ALJ's error is not harmless because (1) the claimant established that she has a severe impairment that can reasonably produce pain; (2) the record demonstrates that the claimant's treating physicians prescribed medication for the relief of her pain; and (3) the claimant testified that the medication, in addition to providing some relief from her pain, also produces side effects that might affect her ability to perform the work the ALJ found her capable of performing.  Accordingly, the undersigned recommends that this matter be remanded so that Ms. Green's residual functional capacity can be reevaluated with due consideration given to the side effects of her medications.

### (4)     DID THE ALJ IMPROPERLY RELY ON THE MEDICAL-VOCATIONAL GUIDELINES?

Ms. Green's final argument is that the Commissioner erred in relying exclusively upon the Medical-Vocational Guidelines to find her disabled.  Once a claimant satisfies his burden under the first four steps of the required analysis, the burden shifts to the Commissioner to show that there is other gainful employment available in the national economy that the claimant is capable of performing.[87]  The Commissioner may meet that burden by reference to the Medical-Vocational

---

[87]     *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

Guidelines of the regulations,[88] by expert vocational testimony, or by other similar evidence.[89]  The Commissioner may rely exclusively on the Guidelines only if (1) the claimant suffers only from exertional impairments or (2) the claimant's nonexertional impairments do not significantly affect his residual functional capacity.[90]  Thus, the Guidelines may be used exclusively "only if the guidelines' evidentiary underpinnings coincide exactly with the evidence of disability appearing in the record."[91]  If nonexertional impairments significantly affect the claimant's residual functional capacity, the Commissioner may not rely upon the Guidelines exclusively; instead, he is permitted to look to the Guidelines for guidance but must also utilize expert vocational testimony or other similar evidence to meet his burden of proving that there are a significant number of jobs in the national economy that the claimant can perform.[92]

---

[88]	The Guidelines, also known as the "Grids," are found at 20 C.F.R. § 404, Sub-part P, Appendix 2.

[89]	*Fraga v. Bowen*, 810 F.2d at 1304.

[90]	20 C.F.R. § 404.1569; *Fraga v. Bowen*, 810 F.2d at 1304.

[91]	*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Scott v. Shalala*, 30 F.3d 33, 34-35 (5th Cir. 1994); *Lawler v. Heckler*, 761 F.2d at 197.

[92]	*Fraga v. Bowen*, 810 F.2d at 1304.  See, also, *Crowley v. Apfel*, 197 F.3d at 199; *Lawler v. Heckler*, 761 F.2d at 198; *Dellolio v. Heckler*, 705 F.2d 123, 127-28 (5th Cir. 1983).

If the claimant has nonexertional limitations, the Commissioner should make an individualized determination of the claimant's ability to perform specific jobs in the national economy.[93]   When an ALJ determines that a claimant suffers from a nonexertional impairment that prevents performance of the claimant's past work, the Commissioner generally must produce expert vocational testimony or other similar evidence to establish that jobs exist in the national economy that the applicant can perform.[94]   In this case, however, the claimant had no relevant past work, the ALJ relied solely upon the Guidelines, and no vocational expert testified at the hearing.

As noted previously, the Commissioner found that Ms. Green retains the residual functional capacity to perform all sedentary work.  In this case, however, Ms. Green's primary complaint is back pain.  Pain can impose both exertional and nonexertional limitations on an individual's ability to engage in substantial gainful activity.[95]   Nonexertional limitations include difficulty functioning due to pain.[96] Back pain causes a nonexertional limitation when it requires an individual to alternate periods of sitting and standing because such a requirement limits an individual's

---

[93]     *Carry v. Heckler*, 750 F.2d 479, 483, n. 9 (5th Cir. 1985).

[94]     *Lawler v. Heckler*, 761 F.2d at 198; *Dellolio v. Heckler*, 705 F.2d at 127-28.

[95]     *Dellolio v. Heckler*, 705 F.2d at 127.  See, also, *Scott v. Shalala*, 30 F.3d at 35.

[96]     See 20 C.F.R. § 404.1569a(c)(1).

-20-

ability to perform a full range of sedentary work.[97]  When pain imposes a nonexertional limitation, the ALJ must utilize expert vocational testimony to establish that jobs exist.[98]  More specifically, the Fifth Circuit has determined that when a claimant is required to alternate sitting and standing throughout the work day, vocational expert testimony is required.[99]  Having to alternate between sitting and standing in order to work the entire day does not fit within the definition of sedentary work.[100]  Furthermore, the regulations require that a residual functional capacity "assessment must be specific as to the frequency of the individuals need to alternate sitting and standing."[101]

In this case, the ALJ did not address whether Ms. Green's back pain is worsened by prolonged sitting and therefore requires her to alternate between sitting and standing throughout the day.  The ALJ also failed to evaluate whether Ms. Green's complaints concerning the effects of her medications impact her ability to perform the full range of sedentary work.  While it is true that allegations of

---

[97]     *Scott v. Shalala*, 30 F.3d at 35.

[98]     *Scott v. Shalala*, 30 F.3d at 35, citing *Fraga v. Bowen*, 810 F.2d at 1304.

[99]     *Scott v. Shalala*, 30 F.3d at 33-35.

[100]     *Ripley v. Chater*, 67 F.3d at 557, n. 25, citing *Scott v. Shalala*, 30 F.3d at 34.

[101]     *Sneed v. Astrue*, No. 1:08-cv-00942, 2009 WL 3448854, at *5 (W.D. La. Oct. 26, 2009).

nonexertional limitations do not preclude application of the Grids if the ALJ determines that the limitations do not significantly limit the range of work permitted by exertional limitations,[102] no such finding was made in this case.  Rather than evaluating the effect that Ms. Green's pain might have on her ability to perform sedentary work, the ALJ found her pain complaints not credible to the extent that they are inconsistent with his finding that she can perform a full range of sedentary work, and the ALJ ignored her complaints concerning the side effects of her medications.

The undersigned finds that the ALJ erred in failing to find that Ms. Green has limitations that preclude exclusive reliance on the guidelines.  The ALJ also erred in relying solely upon the Guidelines and failing to obtain testimony from a vocational expert.

A reviewing court must affirm the Commissioner's determination of disability when substantial evidence of record supports the determination, but the court must not affirm a decision reached by failing to follow established legal standards.[103] When an ALJ improperly relies on the Guidelines, he has failed to follow established legal standards.  Under sentence four of 42 U.S.C. § 405(g), the Commissioner's decision may be reversed and the case may be remanded for further administrative

---

[102]    *Newton v. Apfel*, 209 F.3d at 458, citing *Fraga v. Bowen*, 810 F.2d at 1304.

[103]    *Hughes v. Shalala*, 23 F.3d 957, 959 (5th Cir. 1994); *Moore v. Sullivan*, 895 F.2d 1065, 1070 (5th Cir. 1990); *Leidler v. Sullivan*, 885 F.2d 291, 294 (5th Cir. 1989).

action when the court finds that improper legal standards were applied.[104] Accordingly, the undersigned recommends that this matter be reversed and remanded for supplementation of the record with vocational expert testimony and a reevaluation of Ms. Green's residual functional capacity.

## CONCLUSION AND RECOMMENDATION

The undersigned finds that the ALJ applied inappropriate legal standards in ruling on this case, and the ALJ's findings are not based on substantial evidence in the record.  Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **REVERSED** and **REMANDED** for further administrative action under sentence four of 42 U.S.C. § 405(g), specifically for the purpose of (1) documenting the date on which the claimant applied for Social Security benefits; (2) documenting the date on which the claimant alleges that she became disabled; (3) reevaluating the claimant's residual functional capacity; and (3) obtaining the testimony of a vocational expert regarding whether there are jobs available in the economy that the claimant can perform.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of

---

[104]    See *Moncrief v. Gardner*, 357 F.2d 651, 653 (5th Cir. 1966).

this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 13th day of January 2015.

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

COPY SENT:

DATE:   1/13/2015
BY:         EFA
TO:         RFD
              cg

-24-